UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MATHEW JOHNSON,** | Case No. 3:21-cv-00702-MO |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **STATE OF OREGON, OREGON DEPARTMENT OF HUMAN SERVICES, KATHY WENTZ, DAVID DOUGLAS SCHOOL DISTRICT, HOLLY SCHAUER, JOHN-MICHAEL THEISEN, JOHN DOE #1, JOHN DOE #2, and JOHN DOE #3,** | |
| Defendants. | |

**MOSMAN, J.,**

Plaintiff Mathew Johnson ("Johnson") brings this action against Defendants the State of Oregon ("the State"), the Oregon Department of Human Services ("DHS"), Kathy Wentz ("Wentz"), John-Michael Theisen ("Theisen") (collectively "the State Defendants"), David Douglas School District ("the District"), Holly Schauer ("Schauer") (collectively "the District Defendants"), and John Does #1-3 under 42 U.S.C. § 1983, contending they violated his First, Fourth, and Fourteenth Amendment rights. Johnson, the biological father of minor child E.J.,[1]

---

[1] To maintain privacy, the Court uses the minor child's initials.

Page 1 – OPINION AND ORDER

contends that Defendants assisted E.J.'s biological mother to wrongfully remove their child from Oregon to Arizona. Johnson also brings claims for negligence, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED") against Defendants Wentz and Schauer. Presently before the court are the State and the District Defendants' motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons that follow, the Court GRANTS the Motions to Dismiss.

## BACKGROUND

Johnson alleges that he was E.J.'s primary caregiver for approximately six years preceding the relevant events. (First Am. Compl. ("FAC") ¶¶ 17-18, ECF No. 2.) In June 2015, Johnson and E.J. moved to Portland, Oregon. (Id. ¶ 20.) Meanwhile, E.J.'s biological mother, Kathryn Synder, was in and out of numerous drug rehabilitation programs in Maricopa County, Arizona. (Id. ¶¶ 4, 19.) Beginning in July 2017, Synder made several calls to the Portland Police Bureau and DHS complaining that Johnson demonstrated abusive behavior toward E.J. (Id. ¶ 21.) Law enforcement visited Johnson's home over a dozen times to check on E.J.'s welfare, and each time E.J. was declared safe and the call unnecessary. (Id. ¶ 22.) DHS conducted three child safety investigations. (Id. ¶ 23.) In July 2017, Britany McHill investigated and concluded the claims of child endangerment were "unfounded." (Id. ¶ 24.) In August 2018, Steven Jackson's investigation concluded the allegations were "unfounded." (Id. ¶ 25.) On May 8, 2019, Wentz, who is employed by DHS, investigated and concluded that she was "unable to determine" an incident of child endangerment. (Id. ¶ 26.)

On May 9, 2019, Wentz accompanied Snyder to Ventura Park Elementary School, which is within Defendant David Douglas School District. (Id. ¶ 27.) With the assistance of Defendant

Schauer, Principal of Ventura Park Elementary School, Wentz and Snyder pulled E.J. from school. (*Id.* ¶ 27-28.) With assistance from Wentz, Synder and E.J. boarded an airplane and flew to Arizona. (*Id.* ¶ 29.)

On May 10, 2019, Johnson obtained an Order from Multnomah County Circuit Court Judge Katherine Tennyson (Case No. 19DR08768), granting him temporary custody under Oregon Revised Statute ("ORS") § 107.097(3). (*Id.* ¶ 30). On May 13, 2019, Johnson flew to Arizona seeking to enforce the Order in Maricopa County. (*Id.* ¶ 31.) Maricopa County Judge Todd F. Lang ruled that E.J. should be returned to Johnson's custody based on Judge Tennyson's Order until May 17, 2019, when he could conduct a more thorough hearing. (*Id.* ¶ 32.)

On May 17, 2019, Judge Lang conducted a hearing, with Snyder and Johnson presenting testimony while E.J. was supervised in Judge Lang's chambers. (*Id.* ¶ 34.) The Arizona Department of Child Safety ("ADCS") through its employee Jessica Carranza filed an emergency motion seeking to have E.J.'s custody placed with ADCS. (*Id.* ¶¶ 36-37.) Carranza alleged that E.J. was in danger because of the dynamics of Johnson's household, and asserted that Johnson would flee to avoid ADCS. (*Id.* ¶¶ 37-38.) Judge Lang granted emergency custody of E.J. to ADCS, who then transferred custody to DHS. (*Id.* ¶ 39.) E.J. spent four months in DHS custody in foster care. (*Id.* ¶ 40.)

On September 13, 2019, Multnomah County Circuit Court Judge Kathryn Villa-Smith (Case No. 19JU03827) issued an order providing that custody of E.J. was to be returned to Johnson upon the creation of a safety plan by DHS. (*Id.* ¶ 41.) On September 16, 2019, Assistant Attorney General John-Michael Thiesen, on DHS's behalf, provided a letter stating that DHS could not create a safety plan or return E.J. to Johnson based on Johnson's actions in an "unrelated

pending case." (*Id.* ¶ 42.) On October 3, 2019, Multnomah County Circuit Court ordered Johnson to submit to a psychological evaluation. (*Id.* ¶ 43.) On October 3, 2019, DHS awarded Snyder physical custody of E.J., and E.J. was flown to Arizona. (*Id.* ¶ 44.)

On February 11, 2020, the Oregon Court of Appeals ruled that DHS violated Johnson's right of participation under ORS § 419B.875 and reversed the case for further proceedings. (*Id.* ¶ 45.) Johnson alleges he was granted temporary legal custody of E.J., and that he continues to fight for physical custody. (*Id.* ¶ 47.) Johnson contends that a custody hearing occurred on March 26 and 29, 2021, and that he was deprived of familial association of E.J. for 726 days. (*Id.* ¶ 47.)

In the First Amended Complaint, Johnson asserts numerous claims against the State and District Defendants contending they violated his right to familial association, caused an unreasonable seizure, and interfered with his parent/child relationship guaranteed by First, Fourth, and Fourteenth Amendments when they assisted Snyder in removing E.J. from school without a warrant, court order, and without special needs or imminent danger (Claims One, Three, Four, Six, and Eight). Johnson asserts numerous *Monell* claims contending that the State and District Defendants failed to adequately train Wentz and Schauer (Claims Ten, Eleven, Twelve, Thirteen, and Sixteen). And, Johnson brings state law claims for negligence, IIED, and NIED against Wentz and Schauer (Claims Twenty through Twenty-Five).[2]

---

[2] On June 28, 2021, the Court entered stipulated judgment of dismissal with prejudice as to Defendants the State of Arizona, the Arizona Department of Child Safety, and Jessica Carranza only. (Stipulated Limited J., ECF No. 21.)

Page 4 – OPINION AND ORDER

Johnson seeks $4,363,100.00 in non-economic damages, and $100,023.05 in economic damages. (*Id.* ¶¶ 10-11.)  The State and District Defendants move to dismiss all claims under Rule 12(b)(6). (State Defs.' Mot. Dismiss, ECF No. 27; District Defs.' Mot. Dismiss, ECF No. 22.)  Johnson filed a response brief to the State Defendants' motion only.[3]  (Pl.'s Resp., ECF No. 35.)

## LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  A court may dismiss "'on the lack of cognizable legal theory or the absence of sufficient facts alleged'" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017).  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556.

The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Teixeira*, 873 F.3d at 678; *see also Iqbal*, 556 U.S. at 679; *Kwan v. SanMedica*

---

[3] The court concludes that oral argument would not be helpful to resolution of the instant motions, therefore, Defendants' request is denied. LOCAL RULE 7-1(d).

Page 5 – OPINION AND ORDER

*Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal citations omitted). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## DISCUSSION

I. <u>Stipulated Dismissal</u>

In his briefing, Johnson agrees to dismiss Claims Seven and Nineteen. (Pl.'s Resp. at 6, 9.) Accordingly, I DISMISS claims Seven and Nineteen with prejudice.

II. <u>The State, DHS, Wentz, and Thiesen's Motion to Dismiss</u>

    *A.    Johnson's § 1983 Claims*

In Claims One, Three, Four, Six, and Eight, Johnson alleges that the State, DHS, Wentz, and Thiesen violated his First, Fourth, and Fourteenth Amendment right to be free from unreasonable seizures and to familial association. In Claims Ten, Eleven, and Sixteen, Johnson seeks to impose municipal and supervisory liability on the State, DHS, and John Doe #1 for Wentz's alleged unconstitutional conduct. The State Defendants move to dismiss all claims against the State, DHS, and its employees based on Eleventh Amendment sovereign immunity. In his response, Johnson appears to agree that the State and DHS must be dismissed as Defendants, but only with respect to Claims One and Four. (Pl.'s Resp. at 4-5.)

//

//

The Eleventh Amendment of the United Stated Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign state.

"The Eleventh Amendment prohibits a citizen from suing a state for monetary damages in federal court without its consent." *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1184 (9th Cir. 2003). Absent a waiver by the state or a valid authorization from Congress, the Eleventh Amendment bars an action in federal court against the State in a § 1983 claim. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011); *Snell v. McCauley Potter Fain Assocs.*, Case No. 3:18-cv-227-SI, 2018 WL 3468364, at *4 (D. Or. July 18, 2018) (holding the State of Oregon and DHS immune from suit in federal court under the Eleventh Amendment); *Ishmael v. Oregon Dep't of Corr.*, Case No. 2:14-cv-01651-JO, 2015 WL 5829808, at *2 (D. Or. Oct. 6, 2015) (holding the State of Oregon and the Oregon Department of Corrections immune from suit under the Eleventh Amendment). The State of Oregon has not waived its sovereign immunity in this case, and the Supreme Court has explicitly held that "§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity." *Kentucky v. Graham*, 473 U.S. 159, 169 n. 17 (1985).

It is also well-settled that state agencies similarly are entitled to immunity from suit. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (holding the state's "arms" are immune from suit under the Eleventh Amendment); *Brown v. Or. Dep't Corr.*, 751 F.3d 983, 989 (9th Cir. 2014) (holding claims against Oregon Department of Corrections and damages claims against individual defendants in their official capacities barred by Eleventh Amendment); *Abraham v. Or. Dep't. of Corr.*, Case No. 2:13-cv-00827-AC, 2014 WL 5018813, at *4 (D. Or. Oct. 2, 2014) ("The Ninth Circuit has repeatedly held that 42 U.S.C. § 1983 does not

unequivocally abrogate a state's sovereign immunity, and may not be used to recover damages against a state, state agency, or government officers acting within their official capacities"). Furthermore, the State and its agencies are not "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Californians for Renewable Energy v. Cal. Public Utils. Comm'n.*, 922 F.3d 929, 941 (9th Cir. 2019) ("Congress did not intend states to be subject to suit under Section 1983.") (internal quotation omitted).

Here, DHS is a state organization protected from suit under the Eleventh Immunity. Additionally, Wentz and John Doe #1 are employees of DHS, and are alleged to have acted in their official capacities at all times. (*See, e.g.,* FAC ¶¶ 8-9, 49 ("Wentz, in her capacity as an ODHS employee, intentionally used her authority to seize and remove [E.J.] from her school")). Additionally, Thiesen is an Assistant Attorney General, and is an employee of Oregon Department of Justice, another state organization protected from suit by the Eleventh Amendment. (FAC ¶ 12.) Johnson alleges that Thiesen was acting "at all times and in all actions at issue acting in that capacity" on behalf of DHS. (*Id.,* see also FAC ¶ 60 "Thiesen, in his capacity as representative of the interest of the ODHS, intentionally violated Mr. Johnson's right to familial association.") "Because a suit against a governmental officer in his/her official capacity is equivalent to a suit against a governmental entity itself, Plaintiffs' suit is against DHS." *Campbell v. Or. Dep't of Human Servs.*, Case No. 6:18-cv-00603-MK, 2019 WL 7877882, at *3 (D. Or. Nov. 7, 2019). *See also Gomez v. Vernon*, 255 F.3d 1118, 1126 (9th Cir. 2001) ("A suit, like this one, against a governmental officer in his official capacity it equivalent to a suit against the governmental entity itself."). Johnson does not allege that Wentz, Theisen, or John Doe #1 acted in their personal

capacities. Accordingly, the State Defendants are immune from suit under the Eleventh Amendment.

Johnson appears to contend that he may proceed pursuant to *Monell v. Dep't of Soc. Servs. N.Y.C.*, 436 U.S. 658 (1978). (See Pl.'s Resp. at 4-5.) *Monell* does not apply here. In *Monell*, the Court held, after extensive analysis of § 1983's legislative history, that Congress did not intend to insulate local governments and municipalities from suit when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. However, *Monell* does not extend to allow similar suits for damages against states, state agencies, or certain state officers and agents. *Id.; Abraham*, 2014 WL 5018813, at *4 (rejecting *Monell* claims against the state, Oregon Department of Corrections, and corrections employees in acting in their official capacities on sovereign immunity grounds). Johnson has not alleged that the State has consented to be sued in this case. Therefore, the Eleventh Amendment insulates the State, DHS, and its employees acting in the official capacities from § 1983 liability, and the State Defendants' motion to dismiss Claims One, Three, Four, Six, Eight, Ten, Eleven, and Sixteen is GRANTED and the claims are dismissed with prejudice.

   B. *State Law Claims Against Wentz*

Johnson brings three tort claims against Wentz for actions she took in her official capacity: Claim Twenty Negligence, Claim Twenty-Two IIED, and Claim Twenty-Four NIED. The Court has supplemental jurisdiction over Johnson's state law claims pursuant to 28 U.S.C. § 1367. Johnson failed to provide timely notice under the Oregon Tort Claims Act ("OTCA") of these

three claims and also brought the claims against the wrong defendant. Therefore, I DISMISS these claims with prejudice.

The OTCA states that "every public body is subject to civil action for its torts and those of its officers, employees and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function ...." ORS § 30.265. Additionally, under the OTCA "claims against public employees committed in the course of employment must be brought against a public body." *Nordenstrom for Estate of Perry v. Corizon Health Inc.*, 3:18-cv-01754-HZ, 2021 WL 2546275, at *19 (D. Or. June 18, 2021) (citing ORS § 30.265(2)).

As previously discussed, at no point in the complaint does Johnson allege that Wentz acted in her individual capacity. Therefore, at all times she was acting under the "course and scope" of her employment in her official capacity. *Minnis v. Oregon Mut. Ins. Co.*, 334 Or. 191, 201 (2002). And because Wentz was a public employee acting in the course of her employment, Johnson instead should have brought these claims against Wentz's employer—DHS.

The OTCA contains various notice requirements that Johnson also failed to meet. ORS § 30.275(1) ("No action arising from any act or omission of a public body or an officer, employee, or agent of a public body ... shall be maintained unless notice of claim is given as required by this section.") "The pleading and proof of notice sufficient to satisfy the requirements of ORS 30.275 are a mandatory requirement and a condition precedent to recovery under the [OTCA]." *Beaver v. Pelett*, 299 Or. 664, 671 (1985) (en banc) (citing *Urban Renewal Agency v. Lackey*, 275 Or. 35, 40 (1976)) (cleaned up). Johnson had 180 days to provide notice of these three tort claims to the proper defendant. ORS § 30.275(2)(b). The dates of the alleged injury underlying Claims Twenty, Twenty-Two, and Twenty-Four against Wentz range from May 8–9, 2019. (FAC ¶ 26–

29.) That means that Johnson had to provide notice of these claims, through the procedures laid out in ORS § 30.275(3), by November 5, 2019. The filing of this lawsuit on May 6, 2021, comes over eighteen months too late for purposes of the OTCA.

Therefore, Johnson's claims for negligence, IIED, and NIED against Wentz in Claims Twenty, Twenty-Two, and Twenty-Four are DISMISSED with prejudice.

II.     The District Defendants' Motion To Dismiss

The District and Schauer move to dismiss all claims against them. Johnson did not file a response to the District Defendants' motion. As this court has determined previously, a plaintiff's failure to respond to a dispositive motion may be construed as a concession on the merits. *See Yentz v. Nat'l Credit Adjusters, LLC*, No. 3:20-cv-01364-AC, 2021 WL 1277961, at *4 (D. Or. Feb. 15, 2021), *adopted*, 2021 WL 1270457 (Apr. 6, 2021) (granting motion to dismiss where plaintiff failed to respond to the motion, finding it a concession on the merits and treating claim as abandoned) (collecting cases); *Fletcher v. U.S. Dep't of Agric.*, Case No. 3:20-cv-1243-SI, 2021 WL 1857407, at *4 (D. Or. May 10, 2021) (dismissing complaint on motion to dismiss where plaintiff failed to respond). Numerous decisions are in accord with *Yentz*. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010) ("A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . . has effectively abandoned his claim, and cannot raise it on appeal.") (citations omitted); *Hensley v. Interstate Meat Distrib., Inc.*, Case No. 3:19-cv-0533-YY, 2020 WL 1677658, at *4 (D. Or. Jan. 10, 2020), *adopted*, 2020 WL 1674350 (D. Or. Apr. 6, 2020) ("Given the circumstances here, dismissal is appropriate. Plaintiff has failed to file any response to defendant's motion to dismiss, even though the court granted him an extension of time to do so.").

Here, the Court gave Plaintiff—who is represented by counsel—two extensions of time to respond to the motions to dismiss. Order (ECF Nos. 31, 33). He failed to do so. The Court treats the absence of responsive briefing by Johnson to the District Defendants' motion a concession on the merits. I grant the motion and DISMISS Claims One, Four, Seven, Twelve, Thirteen, Seventeen, Twenty-One, Twenty-Three, and Twenty-Five with prejudice.

## CONCLUSION

Based on the foregoing, I GRANT the State Defendants' Motion to Dismiss (ECF No. 27). Claims One, Three, Four, Six, Seven, Eight, Ten, Eleven, Sixteen, Nineteen, Twenty, Twenty-Two, and Twenty-Four are DISMISSED with prejudice. I GRANT the District and Schauer's Motion to Dismiss (ECF No. 22). Claims One, Four, Seven, Twelve, Thirteen, Seventeen, Twenty-One, Twenty-Three, and Twenty-Five are DISMISSED with prejudice.

The only remaining claims in this case are Claim Seventeen against John Doe #2 and Claim Eighteen Against John Doe #3. Plaintiff has failed to identify and serve the remaining Doe defendants. Plaintiff has thirty days from the date of this opinion to identify and serve John Doe #2 named in Claim Seventeen and John Doe #3 named in Claim Eighteen. Fed. R. Civ. P. 4(m).

DATED this 26th day of April, 2022.

MICHAEL W. MOSMAN
Senior United States District Judge